**Virginia R. HERZBRUN et al., Plaintiffs,**

v.

**MILWAUKEE COUNTY et al., Defendants.**

**Civ. A. No. 70–C–601.**

United States District Coourt, E. D. Wisconsin.

March 6, 1972.

John S. Williamson, Jr., Milwaukee, Wis., for plaintiffs.

Robert P. Russell, Corp. Counsel by Robert G. Polasek, Asst. Corp. Counsel, Milwaukee, Wis., for defendants.

## OPINION AND ORDER

REYNOLDS, Chief Judge.

This is a § 1983 action for equitable relief, and this court has jurisdiction under 28 U.S.C. § 1343. Plaintiffs are employees of the Department of Public Welfare of the County of Milwaukee who were either discharged or disci-plined for violation of paragraph (1) (k) of Section 4, Rule VII, of the Milwaukee County Civil Service Commission:

"(1) The following are declared to be cause for suspension, demotion or discharge * * *:

\* \* \* \* \* \*

"(k) is guilty of acts or omissions unbecoming an incumbent of the particular office or position held, which render his suspension, demotion, or discharge necessary or desirable for the economical or efficient conduct of the business of the county or for the best interest of the county government."

Plaintiffs claim that this civil service rule is unconstitutionally vague and overbroad or, alternatively, is being applied in this case to constitutionally protected activity.

A brief survey of the events which led to the disciplining of plaintiffs follows. In 1970 there was a labor dispute between Local 594 and the Department of Public Welfare. On August 20, 1970, the department decided to remove a bulletin board established by the union to facilitate union communications. This removal was allegedly in violation of a collective bargaining agreement. The next day plaintiffs, in retaliation, disrupted department communications during the morning by taking the phones off their hooks. The disruption of the department's telephonic communication system led to the disciplinary proceedings which are now challenged in this suit.

This matter has been submitted to me for decision on the basis of the record made before the Civil Service Commission along with briefs and oral arguments. I find for the plaintiffs.

■■ As I indicated at the hearing held in this matter on January 20, 1972, the issues in this case are foreclosed. The Seventh Circuit in Muller v. Conlisk, 429 F.2d 901 (7th Cir. 1970), and Soglin v. Kauffman, 418 F.2d 163 (7th Cir. 1969), has clearly held that a disci-

plinary proceeding based on the breach of a vague or overbroad rule is inherently defective without regard to the actual conduct alleged to have constituted the breach. Thus, even though an employee might have been discharged under a constitutional rule, the attempt to discharge under an unconstitutional rule will necessarily fail. The plaintiffs in this case were charged with violating paragraph (1) (k) of Section 4, Rule VII, of the Civil Service Commission. I declared this rule unconstitutionally vague and overbroad in light of the First Amendment in Zekas v. Baldwin, 334 F.Supp. 1158 (E.D.Wis., 1971).

Defendants' arguments at the hearing largely centered around the alleged unfairness and unworkability of the *Soglin-Conlisk* rule. While in any case I am bound by this rule, a response in light of defendants' fears and frustrations is appropriate.

First, defendants suggest that it is unfair to hold the county to such a "stiff" constitutional rule when private employers are not so bound. To this there is both a legal and a "real world" reply. Legally, the fact of life is simply that the drafters of the Fourteenth Amendment saw fit to except private citizens from the amendments standards of due process and equal protection. Given the powers of government, the decision to restrict application of the amendments standards to cases involving state action was not unfair. Furthermore, a look at the real world today not only refutes defendants' claim of unfair treatment but suggests that it is the government employer, not the private employer, who has the greater freedom in disciplining employees. The Constitution limits the government employer's freedom to discipline its employees in a manner of its choice only by (1) requiring the procedure to be within the realm of due process, and (2) requiring that the "cause" be for detrimental acts which are not constitutionally protected. A comparable private employer on the other hand, while not curtailed by the Constitution,

likely faces a strong union—a union which no doubt has more than a small say in (1) the disciplining procedure, (2) the acts which may be cause for disciplining, and (3) whether discipline is proper in each particular case. For example, at the beginning of the oral hearing, I opined that given a constitutionally sound civil service rule, the plaintiffs' conduct in this case would more than likely not have been constitutionally protected. Later, defendants in frustration wondered if under the Constitution there was any "civilized way" for the county to discipline its employers. Plaintiffs, however, pointed out that given the employer-union fight which was the setting for plaintiffs' action, more than likely if the events had occurred in a unionized private company, an arbitration board would have prohibited the imposition of discipline.

Second, it is not difficult to draft constitutional work rules if one wants to. As I pointed out in *Zekas*, government employment is not a right, and the Constitution does not prevent attempts to either trim or upgrade a bureaucracy. But if the government employer is not chained to its employees, neither is the government employee the slave of his employer. Thus, government regulation of the lawful off-duty activities of its employees will be subject to close scrutiny, for surely the threat of being fired is equal to the threat of most minor and some not so minor criminal sanctions, and the government's interest in off-the-job conduct is minimal. In *Zekas*, I noted that the civil service rules at issue, both by vagueness and implication, effectively chilled off-the-job activity. I further indicated in *Zekas* that rules which were limited to on-the-job conduct where the government's interest is naturally great should be allowed a wider scope. A government employee's on-the-job constitutional rights vis-a-vis his government are not identical to the nonemployee citizen. Shirck v. Thomas, 447 F.2d 1025 (7th Cir. 1971); Pickering v. Board of Education, 391 U.S. 563, 88 S. Ct. 1731, 20 L.Ed.2d 811 (1968).

While it would be improper to speculate at just how the line will be drawn, defendants can rest assured that workable rules which recognize both the prerogatives and obligations of the government employer and the rights of the government employee are within the scope of the English language for those who will make the effort.

It is therefore ordered that plaintiffs submit to this court a proposed order for judgment in conformance with this opinion no later than fifteen (15) days from the filing date of this order. Prior to submitting the proposed order for judgment to this court, plaintiffs shall submit it to the defendants for approval as to form.